427 So.2d 916 (1983)
Florn HEBERT, Plaintiff-Appellant,
v.
LAKE CHARLES AMERICAN PRESS and Hartford Insurance Company, Defendants-Appellees.
No. 82-497.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearing Denied March 22, 1983.
Salter, Streete & Hale, Steven W. Hale, Lake Charles, for plaintiff-appellant.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Bret L. Barham, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Florn Hebert, filed suit against his employer, Lake Charles American Press, *917 and its insurer, alleging entitlement to workmen's compensation benefits as the result of the contraction of an occupational disease. By amended petition, plaintiff also alleged a work-related back injury rendered him disabled. With regard to the original complaint, the trial judge found the plaintiff failed to prove causation and, accordingly, judgment was rendered in defendants' favor. The latter complaint was dismissed on the grounds plaintiff failed to establish an on-the-job accident resulting in disability. Plaintiff appeals. We reverse in part and affirm in part.
Plaintiff was born on April 4, 1925 and began employment with defendant Lake Charles American Press in November of 1954 where he worked until January 13, 1980, when he was terminated due to health problems. Approximately five years prior to plaintiff's discharge, Mr. Hebert began operating a machine, utilized in the printing process at the Lake Charles American Press, commonly referred to as a PC-13. The machine is located in a small room at defendant's establishment and develops photographic paper by utilizing various chemicals.[1]
The operation of the machine by plaintiff required that he stand in close proximity to the blowers which dry the film. Plaintiff claims that at the time the Lake Charles American Press switched from a hot-type to a cold-type printing process, employing different chemicals, he began suffering irritation to the eyes, a running nose, cough and reddening of the skin. In November of 1979 plaintiff was diagnosed by Dr. Thomas H. DeLaureal as having interstitual pneumonitis. Dr. DeLaureal began a treatment of antibiotics. When plaintiff's symptoms persisted, he was referred by Dr. DeLaureal to Dr. Jana Kaimal, a pulmonary specialist. Subsequently, plaintiff was hospitalized for respiratory difficulties on two occasions.
On May 15, 1980 plaintiff was first examined by Dr. Gene R. Lindley, an internist practicing in Houston with a sub-specialty in pulmonary disease, at the request of Dr. Kaimal, who conducted numerous tests. The testing revealed bronchial asthma.
Since being removed from the work environment, plaintiff's bronchial disorders continued to improve to the point that in March of 1981 a pulmonary function test showed that his condition was normal.
Suit was filed on October 16, 1980, wherein plaintiff alleges that fumes from the printing process, which were emitted from the film developing machine, caused him to contract occupational disease within the meaning of LSA-R.S. 23:1031.1. Benefits on the basis of temporary total disability for the period of January 13, 1980 until March 16, 1981, were sought. Additionally, plaintiff sought permanent partial disability benefits thereafter, contending he could not return to work as a printer in the work environment defendant provided. On January 13, 1981, an amended petition was filed reasserting the occupational disease and further alleging plaintiff suffered an injury to his back while lifting film canisters on January 13, 1980, aggravating a pre-existing back condition. At the conclusion of the presentation of plaintiff's case, after Mr. Hebert testified the alleged back injury occurred on January 9th or 10th, 1980, defendant filed an exception of prescription. The exception was overruled, nevertheless the plaintiff's claim for disability resulting from back injury was ultimately denied on *918 the grounds plaintiff failed to prove trauma to the back other than a pre-existing degenerative spinal condition. The trial judge also dismissed plaintiff's claim premised on occupational disease for failure to establish causation.
The issues presented on appeal are: (1) Did plaintiff prove contraction of an occupational disease by virtue of his employment with the defendant?; (2) Did plaintiff establish an employment-related injury to his back resulting in disability?; and (3) Has plaintiff's cause of action for injury to his back prescribed?
The plaintiff in a workmen's compensation action has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. Lucas v. Insurance Company of North America, 342 So.2d 591 (La. 1977); Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974); Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973); Martin v. H.B. Zachary Co., 424 So.2d 1002 (La.1982) Docket No. 82-C-1221. Sufficiency of evidence of causation is a question of law, not fact. Determination of whether a plaintiff has proven causation is up to the courts, not the medical experts. Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982); Guillory v. U.S.F. & G. Co., 420 So.2d 119 (La.1982). Courts apply legal tests to the facts of the case in order to achieve a just and equitable result. Martin v. H.P. Zachary Co., supra.
Appellee contends that a worker's claim for benefits due to occupational disease must be rejected wherever there are other possible causes of injury not related to the employment and cites in support of this proposition: Page v. Prestressed Concrete Co., 399 So.2d 657 (La.App. 1st Cir.1981). However, "a fair interpretation of 23:1031.1 indicates no intent to depart from the general scheme of the compensation act... the only departure in 23:1031.1 is subsection D, covering disability from occupational diseases occurring when a worker has been employed for less than twelve months. In that case, the worker must prove by an `overwhelming preponderance of the evidence' that the disease was contracted within the last twelve months in order to establish that the `occupational disease ... shall become compensable'. 23:1031.1D." Carter v. Avondale Shipyards, Inc., 415 So.2d 174, 181 (La.1982). The increased burden of proof imposed by R.S. 23:1031.D is clearly inapplicable to the present case, therefore plaintiff need only prove by a preponderance of the evidence that the work environment caused the disability.
The rules relative to proof of causation were recently set forth in Hammond v. Fidelity and Casualty Co. of New York, 419 So.2d 829 (La.1982), as follows:
"The plaintiff-employee in a workmen's compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591, 595 (La.1977). "... Furthermore, medical testimony `must be weighed in the light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability' ..." Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982).
A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. Allor v. Belden Corp., supra at *919 1236; Lindsey v. H.A. Lott, Inc., 387 So.2d 1091, 1092 (La.1980); Lucas v. Insurance Company of North America, supra at 596; Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 1146, 221 So.2d 816, 827-28 (1969). This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it. Allor v. Belden Corp., supra at 1236.

* * * * * *
The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee's disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident. Allor v. Belden Corp., supra at 1236; Johnson v. The Travelers Insurance Co., 284 So.2d 888, 891 (La.1973); Behan v. John B. Honor Co., 143 La. 348, 351, 78 So. 589, 590 (1917).

* * * * * *
... When the doctors speak of cause they are essentially speaking of etiologythe origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff's disability by making manifest symptoms previously unnoticed. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton v. Fireman's Fund American Insurance Companies, 355 So.2d 927, 928 (La. 1978).
Furthermore, "[i]t is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor...." Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La. 1976). See Allor v. Belden Corp., supra at 1237; Bertrand v. Coal Operators Casualty Co., supra."
Plaintiff's family physician, Dr. Thomas DeLaureal, testified as to plaintiff's pre-existing condition of susceptibility to respiratory problems. As aforementioned, he diagnosed plaintiff as suffering from interstitual pneumonitis in November of 1979. Dr. DeLaureal testified that repeated exposure to the chemicals involved could contribute to or cause interstitial pneumonitis. Dr. DeLaureal referred plaintiff to Dr. Kaimal, a pulmonary specialist, whose initial diagnosis of Mr. Hebert was that he was possibly suffering from occupational asthma. Dr. Kaimal testified at trial that plaintiff's improvement following removal from the work place indicated that there could be something in the work environment which precipitated his asthmatic condition. His correlation was substantiated by plaintiff's statement that he began experiencing respiratory problems after the change in the printing process at the American Press.
Dr. Lindley examined plaintiff on three occasions and diagnosed Mr. Hebert as suffering from bronchial asthma, however, he could not make a determination, with reasonable medical certainty, as to whether exposure to chemicals or an infection caused the condition noted in plaintiff.
Appellant called as an expert witness Dr. Joseph Manno, a toxicologist at the LSU School of Medicine in Shreveport, Louisiana, who identified acetic acid as one of the chemicals utilized in the printing process which has been known to cause respiratory problems. He stated: "... in those instances where I've been associated with industrial exposures, it is commonly felt that removal from the environment, followed by improvement, is a strong indication of a causative agent to be the case..." Undisputed is that plaintiff's medical condition improved upon removal from the work environment and, on March 16, 1981, his pulmonary function test proved normal.
We find that the medical evidence clearly establishes a causal connection by a preponderance of the evidence. The plaintiff was *920 essentially in good health prior to the prolonged exposure to toxic chemicals. Thereafter, the symptoms of respiratory disease manifested themselves, thereby creating a presumption of causal connection. Defendant sought to attribute plaintiff's condition to the infection of November 1979 and/or a pre-existing asthmatic condition unaffected by work conditions, however, appellee failed to come forward with sufficient supporting evidence of separate, intervening cause. Rather, defendant sought to discount plaintiff's medical witnesses because of their tendency to refrain from unqualified statements or opinions on such matters of causation. However, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. Hammond v. Fidelity & Casualty Co. of New York, supra. Furthermore, medical testimony must be weighed in light of other credible evidence of a nonmedical character, such as a sequence of symptoms or events in order to judicially determine probability. Schouest v. J. Ray McDermott & Co., supra. We find that the evidence, taken as a whole, establishes the existence of a causal connection between the work environment and disability by a preponderance of the evidence.
With respect to plaintiff's claim for benefits due to an injury to his back, we find that said claim has prescribed. On January 13, 1981, plaintiff filed a first supplemental and amending petition alleging that he suffered an injury to his back resulting in disability on January 13, 1980. Subsequently, at trial on the merits, plaintiff testified that the injury to his back occurred on January 9th or 10th, 1980. The record is void of any evidence indicating the plaintiff's back injury is related to his claim for benefits based on occupational disease. Accordingly, plaintiff's claim for back injuries has prescribed as he failed to file a claim within one year of the accident as required by LSA-R.S. 23:1209.
Plaintiff left the defendant's employ, because of occupational disease on January 13, 1980. He was diagnosed as recovered on March 16, 1981. Accordingly, plaintiff is entitled to benefits on the basis of temporary total disability from January 13, 1980 until March 16, 1981 at the rate of 66 2/3 of his average weekly wage or $148.00 per week. Dr. Kaimal was of the opinion that plaintiff should not thereafter return to the same work environment where exposure to the offending chemicals could occur, however, the physician was confident appellant could return to other forms of employment. Although plaintiff is not totally and permanently disabled, he is not precluded from receiving any compensation award at all. Dodd v. Nicolon Corp., 422 So.2d 398 (La.1982); Schouest v. J. Ray McDermott and Co., Inc., supra; Allor v. Belden Corp., 393 So.2d 1233 (La.1981). An employee may be deemed partially disabled if he is unable to perform the same duties in which he was customarily engaged when injured, or duties of the same or similar character for which he is fitted by education, training or experience. LSA-R.S. 23:1221(3). The plaintiff has a sixth grade education, has been employed with defendant for over 25 years, and his regular occupation is that of running a film developer which necessarily entails exposure to irritating chemicals. Return to his regular livelihood would, in all likelihood, cause a reoccurrence of his disabling respiratory disorder. We find the plaintiff is permanently and partially disabled. Consequently, plaintiff is entitled to benefits pursuant to LSA-R.S. 23:1221(3). Martin v. H.B. Zachary, supra. In addition plaintiff is entitled to recover all medical bills.
We further find that plaintiff is not entitled to penalties and attorney's fees because the failure to provide benefits was not arbitrary and capricious. We so conclude because the onset of occupational disease was subject to reasonable dispute and also because the required causal effect between the work environment and disability is presently subject to considerable litigation. Seee.g.Hammond v. Fidelity & Casualty Co. of New York, supra; and Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982).
*921 For the reasons assigned, the judgment of the trial court denying benefits on the basis of occupational disease is reversed and plaintiff is hereby awarded benefits as set forth hereinabove. Furthermore, the judgment of the trial court dismissing plaintiff's claim based upon back injuries is affirmed as having prescribed. Defendant to be cast with costs.
REVERSED IN PART AND RENDERED; AFFIRMED IN PART.
NOTES
[1] By joint stipulation, it was agreed that plaintiff was exposed to the following chemicals:
1. A-100 activator which contains:
 Sodium sulfate
 Potassium hydroxide E.D.T.A.
 Polyethylene glycol
2. S-400 stabilizer contained the same
chemicals listed above and additionally:
 Acetic Acid
 Aluminum sulfate
 Amonium thiosyanate
3. Flash-o-graph fixer which contains:
 Amonium thiosulfate
 Sodium sulfate
 Sodium citrate
 Acetic acid
4. Copyset developer which contains:
 Sodium sulfate
 Potassium hydroxide
 Hydroquinone
 Potassium carbonate
 Sodium bromide
 E.D.T.A.