JAMES E. BOST, Commissioner for the Court:[1]
This case was previously before the Supreme Court styled Smith v. Hinton, 349 So.2d 510 (Miss.1977). In the decision there, *964 the principal question before the Court was whether or not undue influence was exercised by Hinton in obtaining an insurance policy and whether or not the Dead Man Statute applied. (The chancellor declined to permit Smith to testify). We held that the chancellor was in error in deciding the Dead Man Statute applied and that Smith could not testify. We affirmed his action in deciding that Hinton was not guilty of undue influence.
On the second trial of the case, the question before the Chancery Court of Hinds County was whether or not James Smith, in his lifetime, made an inter vivos gift of the twenty-five thousand dollar ($25,000) insurance policy to his wife, Martha Smith. The trial court held that there was no such gift and that Nelda T. Hinton was entitled to the proceeds of the policy. The first question is whether or not the chancellor erred in so holding.
James Smith was married to Martha Smith. He started an extramarital affair with Mrs. Hinton in about July, 1969. Previously, in April, 1969, he had purchased a $25,000 life insurance policy from Mutual of New York with Mrs. Smith designated as beneficiary. He came home with the policy and gave it to his wife with the words, “This is yours.” Mrs. Smith placed the policy in a desk she used, where other papers were kept. She testified, “That’s where we kept all our records, things like cancelled checks, receipts, bank statements, income tax returns and things like that.” She later placed the policy in a small tin lock box obtained from an insurance company and kept the box in a desk drawer. She said, “The policy lay ‘loose’ in the unlocked desk drawer for almost fourteen months before being placed in the lock box.” Mr. Smith was told the combination of the box by his son.
Mrs. Smith paid at least four (4) premiums on the policy, but testified, “Well, if I was the beneficiary, I felt I should contribute to making the payments.” She agreed that she paid premiums on all the policies including those on her own life and the children’s lives as part of the household bills. Mrs. Smith also testified that she never thought she had any right to the policy other than being a beneficiary, that she did not have rights to the cash value or loan value on the policy and that she maintained it in her possession for safekeeping like other family insurance papers such as automobile and home insurance.
On November 14, 1973, Mr. Smith requested his insurance agent to bring a change of beneficiary form to his motel room; he changed the beneficiary in the said insurance policy from Mrs. Smith to Mrs. Hinton, his mistress, and a month later he obtained a loan, assigning the policy as collateral. Mr. Smith died in June, 1975.
Both parties in this cause rely upon Stepson v. Brand, 213 Miss. 826, 58 So.2d 18 (1952), which upheld an inter vivos gift of certain bank notes. We think that the principles enunciated in Stepson apply to the present case. In Stepson, the Court said:
“According to the great weight of authority, however, the parol gift of a life insurance policy is valid where there is delivery of the policy by the donor to the donee and the other essential elements of a gift are present. In 24 Am.Jur., page 766, Sec. 70, it is said:
‘The general, if not the universal, rule is that a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action. All the essential elements of a valid gift must be present. There must be a complete and absolute surrender of all power and dominion over the policy, and there must be an intention on the part of the donor to part absolutely with the title to it. . . . ’
******
We are mindful of the fact that proof of the gift in cases of this character should be clear and convincing so as not to open the way to fraud arising out of the mere possession of a pretended gift at the time of the death of the alleged donor.” 213 Miss. at 822-23, 835, 58 So.2d at 20, 22.
*965 We conclude that the chancellor was manifestly correct in holding that there was no valid inter vivos gift of the insurance policy made by Mr. Smith to appellant.
The other question presented in this appeal is whether or not the trial court erred in ruling that appellant did not have a vested right to, or equitable lien on, the entire proceeds of the policy by reason of paying some of the premiums.
In 2 Appleton, Insurance Law and Practice, § 923 et seq., at 524 (1966) the general rule on this question is stated as follows:
“The usual rule is that a person not the beneficiary of the contract and, therefore, a stranger to it acquires no vested rights by the payment of premiums or assessments, in the absence of a contract with the insured as to this matter, as he is considered to be a mere volunteer. Nor is the mere expectancy on the part of such person that he will be designated as beneficiary sufficient to vest any rights therein.
The same rule has been followed in many cases where the person making such payments is the beneficiary, where such payments are not made as a result of contract between the beneficiary and the insured. When such payments are made in connection with contracts of ordinary life insurance where the power to change is reserved, or in connection with contracts of fraternal insurance, it has been held that the beneficiary acquires no vested rights and cannot prevent the insured from changing the designation of beneficiary. It has even been held that such payments are in the nature of gifts made to the insured by the beneficiary.”
A majority of the jurisdictions over the United States hold that a third person who pays the premiums on a policy of insurance is not entitled to reimbursement against the person entitled to the proceeds unless he makes such payments under an agreement with the insured or the beneficial owner of the policy or unless he pays the premiums in good faith under the belief that he is the beneficiary or has an insurable interest or to keep the policy alive. We conclude that the chancellor below was not manifestly wrong in holding that no agreement existed in the present case and that Mrs. Smith did not have a vested right to or equitable lien on the proceeds of the policy.
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.

. Sitting pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.